## Spisak v. Downey

*John A. Statler,* for plaintiffs.
*Richard P. Mislitsky,* for defendants.
*John R. Zonarich,* for additional defendant.

LIPSITT, *S.J.*, January 8, 1992—A two-car accident occurred at the intersection of Hockersville Road and

Route 422 in Derry Township, Dauphin County, Pennsylvania on May 7, 1988. Pamela Spisak, plaintiff herein, the operator of one vehicle was seriously injured. She and her husband, Gregory Spisak, filed this action against Francis H. Downey, the operator of the second vehicle and the township of Derry. The defendant township brought in C.M. High Inc. as the additional defendant. The crucial testimony was that the traffic signal was green in both-directions simultaneously. The jury returned a verdict in favor of the plaintiffs in the amount of $917,426.44. The jury found Derry Township 95 percent liable and Francis Downey 5 percent liable. C.M. High Inc., joined because it had performed signal maintenance services in 1988, was absolved. It appears to be a simple case. However, the resourcefulness of the attorneys cannot be underestimated and so the complexities abound.

At trial both drivers testified when they entered the intersection, their respective traffic signals were green in their favor. Downey said he saw both the lights for northbound Hockersville Road and eastbound Route 422 were simultaneously green. Further he stated he reported the malfunction to one of the investigating officers.

The defense asserts the credibility of Mr. Downey was suspect and the police at the scene denied he had told any of them he saw green signals in both directions. The police also testified they monitored the operations of the signal immediately after the accident and found it functioning normally during a 45-minute period. Later the signal was monitored intermittently for 17 days and no malfunctions occurred. Experts were called by both sides and gave contrary evidence on the issue of whether intermittent green-only conflicts were a possibility. There was a letter introduced which was sent

by the Pennsylvania Department of Transportation to every municipality in the Commonwealth including Derry Township suggesting the installation of conflict monitors on all electromechanical traffic signals. The defense asserted the letter was induced by a particular manufacturer wanting to sell its equipment and the signal in question was not suited for such a mechanism nor was it necessary. The experts for the plaintiffs testified the malfunction could occur, one stating "electrostatic dust" could cause the green-only conflict and the other saying he had seen it occur with this system at another place. The defense experts testified the conflicts as described by Downey, could not possibly happen. Hence, the classic battle between the experts.

The defense argues the testimony of Downey was a fabrication, the plaintiffs' experts were completely erroneous and of questionable qualifications and a fair analysis of the evidence should result in a major disagreement with the jury's verdict. Unfortunately for the defense, all this aforementioned evidence and the arguments were presented to the jury and it found the conduct of the original defendants to be causally negligent and apparently the plaintiffs' witnesses to be credible.

Prior to trial, the plaintiffs settled with Francis Downey and signed a pro rata joint tortfeasor release. Accordingly, this discussion concerns only the issues advanced by the township of Derry.

First, the township asserts the evidence was insufficient as a matter of law to establish the existence of prior notice as required by section 8542(b)(4) of the Political Subdivision Tort Claims Act, 42 Pa.C.S. §8501 et seq. The Act provides in part, that "a dangerous condition of ... traffic signs, lights or other traffic controls ..." which creates a reasonably foreseeable risk

requires "the local agency" to have "actual notice or could reasonably be charged with notice...."

The defendant, citing numerous appellate decisions argues the exceptions to governmental immunity must be narrowly interpreted. The defense calls attention to the case of *Whitman v. Riddell,* 324 Pa. Super. 177, 471 A.2d 521 (1984) involving conflicting green signals in two directions, where the conflict was undisputed. The defense points out this case stands for the proposition that general complaints cannot be held to satisfy the statutory notice requirement. Countering the assertions of the defense, the plaintiffs argue the letter referred to above notified the township of a dangerous condition and several internal memos showed the township recognized this danger but failed to act. The township's engineer had recommended replacement of the equipment as early as 1984, and indeed had advised that a conflict monitor would provide added safety. There was also evidence of another accident at the same intersection in December of 1984 where both drivers operating in different directions claimed they had a green light when they entered the intersection. Albeit, this was disputed, the jury was free to determine this prior accident was caused by conflicting green lights and as such, the township had notice.

There was other evidence, perhaps a bit dubious but nevertheless properly introduced of a traffic signal in the township at another location displaying green lights at the same time in opposite direction and the equipment was the same type as involved in the instant accident; and further it was possible that components for the two intersections were being interchanged. The chief of police and township maintenance personnel had shown a concern for safety at the subject intersection and had recommended a conflict monitor. And finally

there was the testimony by one of plaintiffs' experts of the existence of defects in the equipment prior to this accident which should have been known by the township.

Of course, all of the evidence was challenged by the defense and presently it is argued that none of the testimony was either believable, appropriate or relevant. However, if accepted, the record is replete with evidence that the township had actual or constructive notice of the possible condition at the intersection and had time to have taken measures to protect against it.

A second argument dealt with whether or not the court erred in allowing into evidence the township memoranda dated July 27, 1979, and November 10, 1982, which discussed potential civil liability of the township. Both memoranda authored by the chief of police related to possible civil liability if a traffic signal were to show conflicting green signals. The defense avers the question of civil liability is for a jury and the statements in the memoranda infringed on the jury's area of responsibility. Further it is said, the chief is not an expert and could not convey an expert opinion without the requisite qualifications. Also the defense objects to these documents as being "prior notice" of a "dangerous condition" to be distinguished from a potential lawsuit.

The difficulty with defendant's position is that the memoranda were standard examples of party admissions offered to show the township's knowledge of a dangerous condition. The evidence revealed the township was aware of an available ·safety device, but it was felt to be too expensive a proposal.

In *Wyke v. Ward*, 81 Pa. Commw. 392, 474 A.2d 375 (1984), accident victims sued PennDOT, among others, alleging an intersection was inherently dangerous. The Commonwealth Court ruled it was error to

exclude a letter written by the secretary of transportation in which he acknowledged the intersection was unsafe. "Such an admission," the court noted, "is a well-recognized exception to the hearsay rule and should have been admitted." *Wyke v. Ward, supra,* at 407, 474 A.2d at 382.

In another case, *Berkebile v. Brantly Helicopter Corp.,* 462 Pa. 83, 102, 337 A.2d 893, 903 n. 9 (1975), the Supreme Court held a memorandum written by the defendant's employee to the defendant's president was admissible substantive evidence. In that case, a helicopter company's chief test pilot wrote a memo to the company president expressing concern over a rapid rotor decay in the helicopter in climbing flight. The Supreme Court ruled the memo was admissible as a party admission.

Certainly, the memoranda here must be acceptable as acknowledgments and cannot be excluded as improper hearsay.

Next, the township posits the plaintiffs' did not prove the township was negligent, or that any negligence on its part was a substantial factor in causing the accident. In view of the prior matters examined, it is not deemed necessary to dwell on this point. The township merely contends exceptions in derogation of the general grant of governmental immunity must be narrowly construed.

Related to this issue is the contention the evidence presented at trial did not establish the existence of a dangerous condition at the time of trial. Again, the defense repeats, the argument that the monitoring of the traffic light after the accident and thereafter on a periodic basis negated the possibility of conflicting green lights and the lack of any reoccurrence of "intermittent" simultaneous green signals should have

resulted in a verdict in defendants' favor. Clearly, this was the basic question for the jury.

Then, the defense attacks the court's charge asserting it erred in failing to instruct the jury on the issue of whether the plaintiff, Pamela Spisak would have been responsible for disregarding a red signal and in failing to use the verdict slip the defense submitted. First, the court did instruct the jury that as a matter of law, either party would be negligent, upon entering an intersection against a red traffic signal. Further there was no evidence presented by any defendant that Mrs. Spisak had not entered the intersection with a green signal. On the instruction as given and on the face of the testimony, the defendant would not have been prejudiced by any omission in the charge. As to the verdict slip finally submitted to the jury, it is the court's opinion it was purely factual, not favoring either party by any tilting to one or the other. Questions may be prepared for the jury in a variety of ways and a court should not be faulted for not selecting one party's query.

The defense also says the court erred in refusing to grant a mistrial after the testimony of a witness, Gary Kutay, who made references to "insurance and insurance coverage." Kutay, a spouse of a business associate of plaintiffs' counsel was called to project future medical expenses of Mrs. Spisak. Admittedly, this testimony was an annoyance to the court—it was probably unnecessary. However, the objectionable testimony was connected with the witness' qualifications and his background involved his work in the insurance industry. Fortunately, the record shows his mention of insurance did not refer to any coverage by the township. A fair reading of his testimony would not disclose the defendant was prejudiced by the mention of the

term "insurance." A "mistrial" would have been mis-appropriate under these circumstances.

After all that has been reviewed thus far, this court should not be required to consider the weight or sufficiency of the evidence. It may be noted a judgment n.o.v. could be entered only in those cases where no two reasonable persons could disagree the verdict was erroneous. The standard for granting a new trial is also strict. A new trial may not be granted because of a mere disagreement in testimony. The township contended throughout the trial and it remains firm in its belief conflicting intermittent green signal lights are impossible. However, the jury, with the final word, chose to believe the testimony of the plaintiffs' witnesses.

Attention is now directed to the molding of the verdict.

The jury's verdict found Derry Township was 95 percent causally negligent. Section 8553 of the Political Subdivision Tort Claims Act entitled "Limitation on Damages" caps damages against the township at $500,000. The section reads in pertinent part as follows:

"(a) *General Rule*—Actions for which damages are limited by reference to the subchapter shall be limited as set forth in this section.

"(b) *Amounts recoverable*—Damages arising from the same cause of action or transaction or occurrence or series of causes of actions or transactions or oc-currences shall not exceed $500,000 in the aggregate....

"(d) *Insurance benefits*—If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from

the amount of damages which would otherwise be recoverable by such claimant."

Consequently, this court, pursuant to the language of the statute reduced the verdicts of $867,426.44 for Pamela Spisak and $50,000 for Gregory Spisak, molding the verdict at $500,000 in the aggregate. See *City of Philadelphia v. Nationwide Insurance Co.*, 92 Pa. Commw. 20, 498 A.2d 462 (1985).

The defendant Derry Township claimed the evidence of medical expenses of Pamela Spisak, being $46,591.44, should be subtracted from the $500,000 cap in accord with subsection (d) as recited same. Further, any additional medical benefits should result in a future recalculation. And, it is said, Downey's per rata share of liability, $41,202.75 should be set off. As to delay damages, the defense avers it was not at fault for any delay and so plaintiffs are not entitled to any delay damages.

On the other hand, the plaintiffs, disagreeing with the defendant's suggested verdict, cite section 8558 of the Act, *supra*, which provides as follows:

"Section 8558—*Judgments Against Insured Local Agency*

"If the judgment is obtained against a local agency that has procured a contract or policy of public liability insurance protection, the holder of the judgment may use the methods of collecting the judgment as are provided by the policy or contract and the laws of the Commonwealth *to the extent of the limits of coverage provided.*" (emphasis added)

The plaintiffs argue the township is liable for a judgment to the extent of the limits of insurance coverage. Therefore, Derry Township which does have excess coverage (or the insurance carrier) would be responsible

to pay the full amount of any judgment within its policy limits. The cap, it is asserted, was to avoid a drain on municipal funds and not to immunize insurance companies. Apparently, courts in North Dakota and Oklahoma have made such holdings. While it does seem logical that the legislation had intended to protect municipalities and not insurance companies, there are no Pennsylvania cases sustaining this position.

Plaintiffs do agree that Francis Downey's 5 percent share of the verdict must be molded out of the gross verdicts. However, if the 5 percent share is deducted from the gross verdicts, Derry Township still would owe the full $500,000 because the deduction would leave an amount in excess of the $500,000. See *Kowal v. PennDOT*, 100 Pa. Commw. 593, 515 A.2d 116 (1986).

As to the deduction for medical expenses, the plaintiffs' argue there is nothing in the record to show any of Mrs. Spisak's medical bills were covered by insurance and the jury's verdict was awarded in a lump sum making it impossible to determine, what portion, if any was an award for medical expenses. Admittedly there is a semblance in the verdict figures to show the medical expenses were included.

As to delay damages, the courts in Pennsylvania have ruled delay damages may be added even if the total amount exceeds any damage limitations contained in the political subdivision Tort Claims Act. See *Kowal v. PennDOT*, 100 Pa. Commw. 593, 598, 515 A.2d 116, 119-120 (1986).

Under Rule 238 of the Pennsylvania Rules of Civil Procedure damages for delay are generally awarded regardless of fault. Further, Derry Township made no settlement offer and so there is no question as to its responsibility for delay damages.

This court will follow the plain language of the statute, recognize the cap of $500,000 as payable to the plaintiffs and delay damages from July 7, 1989, to September 20, 1991.

Pursuant to this discourse the court enters the following

## ORDER

And now, January 8, 1992, the motions of the defendant township of Derry for post-trial relief are denied and dismissed.

Judgment is directed to be entered against the defendant Derry Township and in favor of the plaintiffs Pamela and Gregory Spisak in the amount of $500,000 with delay damages calculated as follows:

| | |
|---|---|
| For 177 days in 1989 at 11.5% | $ 27,883.56 |
| For 365 days in 1990 at 11.5% | $ 57,500.00 |
| For 263 days in 1991 at 10.75% | $ 38,729.45 |
| Total for delay damages | $ 124,113.01 |

Total judgment directed for the plaintiffs is $624,113.01.